## GARRETT AND COMPANY v. A. JOSEY.

### Decided October 20, 1906.

**1.—Contract—Ratification.**

Evidence considered, and held to sustain a finding by the trial court that a contract made by a traveling salesman with a customer was ratified by the principals.

**2.—Pleading—Evidence—Excessive Judgment.**

The total amount claimed by a plea in reconvention was $200; of this amount $95 was alleged to be profits lost by defendant by the failure of plaintiff to ship certain goods contracted for; and the balance was claimed as commissions due by plaintiff to defendant. There was no evidence as to the loss of profits. A finding by the court of $113 in favor of defendant on said plea in reconvention was therefore excessive and beyond the amount claimed in the pleading.

Appeal from the County Court of Jefferson County. Tried below before Hon. D. P. Wheat.

*Crook, Harris & Lawhon,* for appellant.—The ratification of a contract made by an agent to be binding on the principal must be made with full knowledge of the facts, and the terms of the purported contract must be accepted in toto, and since the undisputed evidence in this case shows that plaintiff's letter to defendant August 8, 1903, does not agree to said contract in toto, plaintiffs can not be bound on this letter for ratification of the contract. Dunn v. Price, 87 Texas, 318; Foster v. New York, etc., 22 S. W. Rep., 263; Flomerfelt v. Hume, 31 S. W. Rep., 179; Williams v. Moore, 58 S. W. Rep., 958; Commercial Bank v. Jones, 18 Texas, 825; Sheer v. Cummings, 80 Texas, 294; 7 Am. & Eng. Enc. of Law, 132; Huffcutt on Agency, sec. 23; Summers v. Mills, 21 Texas, 78; Jackson v. Butler, 51 S. W. Rep., 1095; North Texas Bldg. Co. v. Coleman, 58 S. W. Rep., 1044.

*F. J. and R. C. Duff* and *A. L. Davis,* for appellee.—In order that a principal be bound by the contracts of his agent, it is not necessary that the party contracting with the agent should show that the agent ac-

tually had the authority to make the contract, but it is only necessary to show that the agent had the apparent authority. Houston & T. C. R. R. Co. v. Hill, 63 Texas, 381; Keith v. Hirschberger Optical Co., 2 S. W. Rep., 777.

PLEASANTS, ASSOCIATE JUSTICE.—Appellant, a corporation organized under the laws of the State of North Carolina, brought this suit in a Justice Court of Jefferson County against appellee to recover a balance of $75.20 alleged to be due upon an account for goods sold and delivered to appellee.

The defendant answered by general demurrer and general denial and by the following special plea:

"Specially answering herein this defendant says that he did purchase the goods from plaintiff as set out in the accounts sued on by plaintiff, but that he is not indebted to the plaintiff in any amount, and that the said account had been fully paid and discharged in the manner hereinafter stated, and that plaintiff is indebted to this defendant in the sum of, to wit: Two hundred dollars ($200) by reason of the premises hereinafter set out. This defendant says that he is a liquor dealer in the town of Beaumont, and that he was engaged in such business on the 5th day of February, 1903, on the date when he purchased from plaintiff the goods embraced in the account herein sued on, and that on said date the duly authorized agent of the plaintiff, one Edward Bugg, made with defendant, the following contract, the said Edward Bugg being at said time the traveling salesman of the plaintiff, and authorized to act for the plaintiff, and the terms of said contract being as follows:

"This defendant agreed to purchase from plaintiff 100 cases of wine during the year 1903 at wholesale prices. That defendant would have made a profit of $95 on said amount. In consideration of said agreement on the part of defendant the plaintiff agreed that this defendant should have the sole and exclusive jobbing privileges for the city of Beaumont, and certain adjacent territory, to wit: The town of Port Authur, the town of Sour Lake, Batson Prairie, Nome and other points within a radius of 30 miles of the city of Beaumont, and that all of the products of the plaintiff sold in said territory during said year 1903, should be sold through this defendant as jobber, and that on all sales so made this defendant should receive commission of 25 percent of the total wholesale price of said products; it being further agreed that if sales were made directly by the plaintiff or its agents that the accounts of sales so made should be submitted to this defendant, and if this defendant saw fit to guarantee the payment of said bills he should receive his commission the same as if such sales had been made directly by this defendant, it being further agreed that all sales made by this defendant should be O K'd by this defendant, or in other words, that this defendant should guarantee the payment of all such accounts; that thereafter, to wit, on the 3d day of August, 1903, said contract was discussed between this defendant and one Mr. Friend, the salesman of plaintiff, and its duly authorized agent and the successor of the said Bugg in this territory, and that thereafter in the months of July and August, 1903, said contract was duly ratified by the president of the plaintiff corporation by letters passing between this defendant and

plaintiff; that this defendant says that the plaintiff has wholly failed and refused to carry out the terms of said contract and has breached the same on several occasions, and that during the year 1903, plaintiff has sold a great quantity of its wines and manufactured products in the territory above named, and has failed and refused to submit the accounts of such sales to this defendant for his ratification or rejection, and that a great number of such accounts were good and would have been guaranteed by this defendant, and that this defendant's commission on such accounts together with his profits on the 75 cases of wine, which he agreed to purchase, would have amounted to the sum of two hundred dollars ($200); and that plaintiff is justly indebted and liable to pay to this defendant the said sum of two hundred dollars ($200) which said sum this defendant here now pleads in set off and reconvention to the demand of plaintiff and prays that he have judgment therefor after crediting thereon the amount found to be due plaintiff on the accounts sued on. Defendant further says that he has at all times been ready and willing to carry out his part of said contract and to purchase the amount of wine which he agreed to purchase under said contract, and that he has ordered additional amounts and the plaintiff has wholly failed and refused to fill such orders and has thereby prevented the defendant from fulfilling his part of said contract."

He further pleaded a cash payment on said account of $23.75.

The trial in the Justice Court resulted in a judgment in favor of defendant, that plaintiff take nothing by its suit and that defendant recover his costs.

Upon appeal to the County Court a trial *de novo* therein resulted in a finding in favor of defendant on his counterclaim for $199.63 and after deducting therefrom the amount of plaintiff's demand, which was found to be due by defendant, judgment was rendered in favor of defendant for $113.

The evidence shows that the appellee made the contract set out in his answer with Edward Bugg, a traveling salesman for appellant, but there is no evidence sufficient to sustain a finding that Bugg had any authority from the appellant to make a contract of this kind, and we are of opinion that the facts do not present the issue of apparent authority.

Upon the issue of ratification the evidence is in substance as follows: When the account sued on became due appellant drew on appellee for the amount and the draft was returned with an endorsement thereon that appellee claimed commissions under his contract with Bugg upon all goods sold by appellant in the territory covered by the contract. Thereupon appellant on May 22 wrote appellee a letter which, after stating the facts in regard to the return of the draft with the endorsement above referred to, contains the following: "In this connection, beg to say that Mr. Bugg made no report to us of such agreement with you, and as he is no longer in our employ, we will ask that you kindly give us the names of the parties to whom he sold goods with the understanding that you should have commissions on such orders. Upon receipt of this information we will let you hear further. Thanking you in advance for a prompt reply, we beg to remain, Yours very truly, Garrett & Co."

On June 16 appellant again wrote appellee as follows: "You made

claim sometime ago for commissions due you on some sales made by Mr. Bugg in your city, whereupon we requested you to furnish us with a list of names, so that we could straighten the matter up. So far we have not received a reply to our letter and unless you can furnish us with a list of the sales made by Mr. Bugg, it will be difficult to get at what commissions are due you. Mr. Bugg was a new man with us, and unfortunately confused his transactions no little, and as he is no longer with us, we must rely on you to furnish us with a list of these names so that we can close the account up. Please give the matter your attention and let us hear by return mail and oblige, Yours very truly, Garrett & Co."

Subsequent to the receipt of this letter Mr. Wright, the vice president and general manager of appellant company came to Beaumont and in company with a Mr. Friend, who he introduced to appellee as the representative of the appellant. Appellee informed Wright of the terms of his contract with Bugg and demanded that he turn over to him, under the terms of said contract, all of the orders taken by Wright or Friend. Wright declined to do this and said he did not have time to discuss the matter, but Mr. Friend could settle it with appellant. No definite understanding was reached with Friend. He wanted to exclude from the contract some of his customers and appellee would not agree to this proposition. Friend turned over to appellee one of the orders taken on this trip to be shipped under the terms of the contract.

On August 3 appellee wrote appellant as follows:

"Beaumont, Texas, August 3, 1903.

"Messrs. Garrett & Co.,
        Weldon, N. C.

"Gentlemen: Your representative, Mr. Friend, is in the city and we have been trying to effect a settlement in regard to my account and commissions which I claim are due me on goods that you have sold since I went into an agreement with your Mr. Bugg, in March. You ask in your letter of June 16 for me to give you a list of goods which might have been sold by you and which I claimed commissions upon, this would be almost an impossibility for me to do as I have no way of ascertaining except to go to each party whom I thought you might have sold goods to and nine chances out of ten I would get no satisfaction from them.

"You have your books and know good and well what parties you have sold to and the amount you have sold to each one. I am ready at any time for the submission of these accounts to me, for my guarantee and approval of payment of same. You will please render me a list of them all and upon receipt of same, I will deduct my commissions and remit you balance due you, if any, and if you are indebted to me, I will kindly ask you to send checks to cover amount of same.

Yours truly,

A. Josey."

On the 8th of August appellant again wrote appellee as follows:

"Weldon, N. C., August 8, 1903.
"Mr. A. Josey,
       Beaumont, Texas.
"Dear Sir: Our Mr. Friend writes us that you claim to have had some agreement with his predecessor, Mr. Bugg, by which you were to have a commission on all goods sold by us in Beaumont, this season. We have had no intimation from Mr. Bugg as to any such arrangement with you and the only information we have is that given us on the back of the order, that you agreed to buy not less than 100 cases of our specialties during the season. We wish, however, to reach a pleasant settlement of this matter and notwithstanding the fact that we have your signed order for these goods with nothing whatever said about any commissions, we write to ask you before going any further into the matter, to authorize us to make up a statement of all the goods sold in Beaumont this year, giving you the jobber's commissions, you guaranteeing all of the accounts sold by us to date, we agreeing to submit any further orders received from this territory to you for your approval. You can readily understand that had we supposed that you would get a commission on these orders, we should have required you to O. K. the orders before filling them. However, as you claim that Mr. Bugg made you such a proposition, if you will now authorize us to make up a statement of all sales, you guaranteeing all accounts and sending us instructions to ship you 75 cases of wine, balance on the 100 case order, we will get up a statement of what goods were sold, turn over all unpaid accounts to you, or any claims arising out of these accounts and you can remit to us for balance due. Naturally, if you were to get the jobber's discount, you would have to assume the responsibility for the account.
"Awaiting your instructions and an acknowledgment of the terms of this suggestion as specified above, we are,
                               Yours very truly,
                                           Garrett & Co."

To this letter appellee replied on August 12 as follows:

"Beaumont, Texas, August 12, 1903.
"Messrs. Garrett & Co.,
       Weldon, N. C.
"Dear Sirs: Your letter of the 8th ult. is at hand and in reply to same will say that I will accept your proposition wherein you state that you will get up a list of all wines sold by you since the date of my contract with Mr. Bugg. Of course, you will understand that this contract holds good for one year, from date of my agreement with Mr. Bugg. While this contract does not exactly correspond with the original agreement (viz.) that all the orders should have been submitted to me for my approval and guarantee before shipment of same was made. You will further understand and as I take your letter, that it must be a complete list of all goods sold by your firm in the town of Beaumont, including good, bad and indifferent accounts and whether the same has been paid or not. You can ship me a duplicate of my first order for twenty-five cases making the one hundred cases which I agreed to use

within the time limit of twelve months. I refer you to my letter of August 3 wherein I made a request of you to forward me a list of your customers and this letter is also considered to affirm said letter.

"Hoping to receive an early reply, I am,

Yours truly,

A. Josey."

We think this evidence is sufficient to sustain the finding that appellant ratified the contract made by appellee with its agent, Bugg.

Appellee's order for the additional cases of wine was not filled by appellant, and no list was ever furnished appellee of the sales made by appellant in the territory covered by the contract and no payment made of the commissions due appellee under the contract. There is no evidence that appellee would have made any profits on the 75 cases of wine which appellant failed to ship. It was shown that the sales made by appellant, upon which appellee was entitled to commission amounted to $798.53 and his commissions thereon was $199.50.

The total amount of damages claimed by appellee in his pleadings was $200 and of this amount he claimed, $95 as lost profits on the 75 cases of wine which the appellant failed to ship. This leaves only $105 which amount must necessarily be regarded as the extent of the claim for commissions. There being no evidence of the loss of profits on the wine not shipped the $199.63 found by the trial court in favor of appellee was clearly the amount of the commission to which he was entitled under the contract as shown by the evidence. The amount claimed in the pleading as commission being only $105 the finding of the trial court in excess of that amount can not be sustained, because as to such excess the judgment is without pleading to support it.

The judgment of the court below will be reformed so as to conform to the pleading, by reducing the amount found in appellee's favor to $105 and as so reformed will be affirmed at the cost of appellee.

*Reformed and affirmed.*